NOT DESIGNATED FOR PUBLICATION

No. 114,462

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN D. BULK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed December 30, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and WALKER, S.J.

WALKER, J.:  Justin Bulk appeals from his convictions for aggravated battery and aggravated assault. Because we find any trial court errors to be harmless, we affirm.

FACTS

Bulk and his friend Cheyenne Taylor went to the home of a third friend, Robert Stoll. Once there, Bulk, Taylor, and another acquaintance, Daniel Rios, went to an upstairs bedroom to hang out while Stoll took a shower. After entering the room, the men noticed a hand gun lying on the floor next to the bed. Trial testimony was disputed

1

regarding whether the gun was lying in two pieces on the floor with the clip and gun separate, or whether it was on the floor in a holster with the clip in it.

According to Bulk, the gun was in a holster. Bulk claimed that he picked the gun up and removed the clip before he began examining it. Either way, at some point, with the clip separated from the rest of the gun, Bulk began looking at the weapon. Taylor testified that after Bulk examined the gun briefly with it pointed toward the television, Bulk aimed the gun at Taylor and "dry fired" it—meaning that Bulk pulled the trigger and the gun clicked but did not fire because there was no ammunition in the weapon.

At the time Bulk dry fired the gun, Taylor knew that the clip was not in it but was not sure whether there was a round in the chamber. Taylor testified that he heard the gun click and had never been so scared before in his entire life. Taylor got angry and told Bulk to stop pointing the gun at him. Taylor and Rios testified that rather than move the gun away from Taylor, Bulk continued to point the gun at Taylor as he inserted the clip back into it. Seconds later, the gun went off and a bullet passed through Taylor's chest.

Once Bulk realized that he had shot Taylor, he immediately began applying pressure to Taylor's wound to slow the blood loss and called 911 for help. Once medical personnel arrived to assist Taylor, they drove him to the Clay Center hospital where a helicopter was waiting to fly him to the hospital in Salina.

Taylor believed he was going to die in the hospital. The bullet punctured his right lung, and a tube had to be inserted into his lung because it had collapsed. Taylor was in the hospital for 8-10 days and continued to feel the effects of the injury at the time of trial.

Bulk was arrested and charged with aggravated battery and aggravated assault. At trial, the district court mistakenly instructed the jury on a less severe degree of aggravated

battery than that with which Bulk was charged. Apparently no one noticed the discrepancy between the complaint and the jury instruction until after the verdicts were received. The jury found Bulk guilty of both counts. At sentencing, the district court sentenced Bulk in accordance with the severity level of aggravated battery charged (severity level 5 person felony) rather than the severity level that the jury was instructed on and found him guilty of (a severity level 8 person felony). Bulk now appeals.

## ANALYSIS

Bulk alleges a number of different errors which he believes were committed at trial, and we will deal with each of them in turn. However, as noted below, we believe that most of the issues raised by Bulk are rendered moot by our finding that any errors committed by the district court were ultimately harmless in nature.

Bulk first contends that the district court erred when it instructed the jury on severity level 8 reckless aggravated battery rather than severity level 5 reckless aggravated battery as charged. Bulk believes that this error denied him his right to due process and deprived the district court of jurisdiction to convict him. Although Bulk considers the due process and jurisdiction issues separately, both turn on the underlying argument that the district court erred when it instructed the jury, so the issues are best considered together.

Normally the district court should have instructed the jury on the crime charged in the complaint, a severity level 5 reckless aggravated battery, together with any applicable lesser included offenses, including the level 8 reckless aggravated battery. But neither Bulk nor the State objected to the instruction that was given or the district court's failure to give the instruction for severity level 5 reckless aggravated battery.

When a party does not object to the district court's giving of or failure to give an instruction, the standard of review on appeal is clear error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). This review involves a two-step process. First, this court must consider whether there was any error at all by reviewing the entire record to determine whether the instruction at issue was both legally and factually appropriate. If the court finds error, it then assesses whether it is firmly convinced that the jury would have reached a different verdict without the error. 300 Kan. at 408. To the extent that Bulk's appeal requires this court to consider whether the district court violated his constitutional right to due process, this court's review is unlimited. See *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007). While constitutional issues are typically not addressed by this court for the first time on appeal, Bulk properly invokes an exception to the general rule that allows for consideration of claims in order to prevent the denial of an appellant's fundamental rights. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Bulk was charged with aggravated battery in violation of K.S.A. 2014 Supp. 21-5413(b)(2)(A) based on the prosecutor's allegation that he "recklessly caused great bodily harm to another person; to wit: shot Cheyenne Taylor in the chest with a 9mm pistol." The crime charged was a severity level 5 person felony. At the close of the trial, however, the district court instructed the jury that in order to convict Bulk of aggravated battery it must find that he "recklessly caused bodily harm to Cheyenne Taylor with a deadly weapon." The language of the instruction mirrored the language of K.S.A. 2014 Supp. 21-5413(b)(2)(B), severity level 8 reckless aggravated battery, rather than K.S.A. 2014 Supp. 21-5413(b)(2)(A) as charged.

Bulk contends that there is such a significant difference between the two subsections that he was convicted of a crime with which he was not charged. In reality, both K.S.A. 2014 Supp. 21-5413(b)(2)(A) and (B) define ways in which a person can commit reckless aggravated battery. The key difference between the two is that K.S.A. 2014 Supp. 21-5413(b)(2)(A) requires a finding that the defendant recklessly caused

4

"great bodily harm" or "disfigurement of another person," whereas K.S.A. 2014 Supp. 21-5413(b)(2)(B) only requires a finding that the defendant recklessly caused "bodily harm to another" with a deadly weapon or in a manner that could have resulted in "great bodily harm, disfigurement or death."

Contrary to Bulk's assertion, these are not two separate crimes, but various degrees of the same crime. See K.S.A. 2014 Supp. 21-5109(b)(1); *State v. McCarley*, 287 Kan. 167, 177-78, 195 P.3d 230 (2008). Importantly, in *McCarley* our Supreme Court specifically held that the crime with which Bulk was convicted, a severity level 8 aggravated battery, is a lesser included offense of the crime with which he was charged, a severity level 5 aggravated battery. See K.S.A. 2014 Supp. 21-5413(b)(2)(A), (B). When a defendant is charged with a crime, he or she may "be convicted of either the crime charged or a lesser included crime." K.S.A. 2014 Supp. 21-5109(b). A lesser included offense instruction becomes necessary if the evidence presented at trial could "reasonably justify a conviction of some lesser included crime." K.S.A. 2014 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, 521-22, 286 P.3d 195 (2012). In that case, the district court is obligated to give the lesser offense instruction even if it has not been requested by either of the parties. *State v. Williams*, 268 Kan. 1, 14-15, 988 P.2d 722 (1999).

But Bulk is correct that the district court committed clear error by not properly instructing the jury on the more serious charge of aggravated battery involving great bodily harm as charged in the complaint. Bulk is also right that his due process rights are potentially implicated by this error. Our Supreme Court has held that when jury instructions on the elements of a crime of conviction are broader or different than the elements of the crime charged, a defendant's due process rights are implicated because the purpose of the charging document is to inform the defendant of the nature of the accusation against him or her so that he or she is able to adequately prepare his or her defense. See *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015).

Bulk cites to *United States v. Gaudin*, 515 U.S. 506, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995), for authority that the district court violated his right to due process by omitting a crucial element in the instruction. *Gaudin* held that criminal defendants have a constitutional right to be found guilty of all elements of the crime with which they are charged. 515 U.S. at 522-23. Gaudin had complained that the trial court violated his right to due process when it instructed the jury that one of the elements the government was required to prove "'is not submitted to you for your decision but rather is a matter for the decision of the court.'" 515 U.S. at 508. There, the issue was not that the crime the jury was instructed on did not exactly match the crime with which Gaudin was initially charged, but that the district court imposed upon the jury's role as factfinder its own determination that the government had proven one of the elements of the crime. And, as we will discuss below, 4 years later the United States Supreme Court gave very different treatment to a situation where, as here, a critical element was omitted from the jury instruction.

The State argues in response that there was no due process violation because the trial court's omission of the term "great" in connection with the alleged bodily harm, together with the addition of the words "with a deadly weapon," amount to harmless error in the context of the evidence in this case. After careful review, we agree.

Kansas courts apply a harmless error analysis to the omission of an element from the instructions to the jury. When a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. *State v. Reyna*, 290 Kan. 666, Syl. ¶¶ 9-10, 234 P.3d 761 (2010), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

6

In *State v. Daniels*, 278 Kan. 53, 91 P.3d 1147 (2004), our Supreme Court considered a similar situation in which the district court inadvertently omitted the element of bodily harm from the instructions to the jury on a charge of aggravated robbery. After reviewing a number of prior Kansas cases involving harmless error in jury instructions, the Supreme Court ultimately applied the standard set forth by the United States Supreme Court in *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). The trial court in *Neder* had taken the issue of materiality away from the jury in a trial involving tax fraud. The United States Supreme Court ultimately held that refusing to instruct on the element of materiality on the tax fraud charges was erroneous, but the error was not of the type that it had previously found to be "structural error," defined as the type of constitutional error which is so intrinsically harmful as to require automatic reversal. 527 U.S. at 8-9 In *Daniels*, our court set out the test to be used in measuring whether instruction error is harmless:

> "Under the *Neder* test, 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.' 527 U.S. at 17. Stated another way, the reviewing court 'asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' 527 U.S. at 19. If the answer to That question is 'no,' the error may be held harmless." *Daniels*, 278 Kan. at 62.

As this court noted in *State v. Hargrove*, 48 Kan. App. 2d 522, 530, 293 P.3d 787 (2013), this standard results in a two-prong test to determine if an omission of a jury instruction element is harmless:  (1) the evidence bearing on the omitted element must approach "the irrefutable" and (2) a defendant effectively has to concede that component of the charged crime. The *Hargrove* panel cautioned that the test must be rigorously applied, lest the reviewing panel substitute its assessment of the evidence for the jury's factfinding duty.

Here, there was more than enough evidence on which the jury could have convicted Bulk of severity level 5 aggravated battery—aggravated battery that resulted in great bodily harm to the victim. The evidence at trial was undisputed that Bulk accidentally shot Taylor through his chest causing his right lung to collapse and necessitating that Taylor be life-flighted to Salina for treatment. Although his lung was repaired and the bullet wound healed, Taylor testified that he was still unable to participate in rigorous physical activity as a result of the injury. At trial, the defense made no effort to question the nature or extent of Taylor's injuries, or argue that he did not suffer great bodily harm. Instead the defense focused on its theory that the shooting was merely accidental and did not represent reckless conduct by Bulk.

Applying the *Neder/Daniels/Hargrove* test to the facts here, we are convinced beyond a reasonable doubt that the jury's verdict would have been the same absent the error. We do not believe a rational factfinder would determine the injuries suffered by Taylor to be anything other than great bodily harm. For this reason, we find that the district court's instruction error was harmless and Bulk was properly convicted of aggravated battery as a severity level 5 person felony under K.S.A. 2014 Supp. 21-5413(b).

Bulk makes the additional point that the jury instruction actually given in the case does require proof of a different or additional element than the original charge, *i.e.*, that the bodily harm was caused with a deadly weapon. But since Bulk did not make a contemporaneous objection to the instruction at trial, the test becomes whether this was clear error that unduly prejudiced Bulk. See *State v. Hart*, 297 Kan. 494, 509, 301 P.3d 1279 (2013). Here all evidence at trial pointed to the fact that the battery was committed with a gun, and Bulk did not contest that fact. To the extent that anyone was prejudiced by the instruction, it was the State, because the instruction required proof of an additional uncharged element, and proof of that element would not have been required if the proper instruction had been given. Thus, even if we accept Bulk's contention that proof of an

8

additional element was required, he not only suffered no prejudice from the error, but in fact greatly benefited from it. Simply because Bulk frames the issue as a due process violation does not change this fact.

Bulk further contends that severity level 8 reckless aggravated battery is not a lesser included offense of severity level 5 reckless aggravated battery; and, as a result, the district court did not have jurisdiction to enter a judgment against him for the severity level 8 crime. As should be clear from the foregoing discussion, we find this argument to be without merit. Since we believe Bulk was properly convicted of the severity level 5 version of aggravated battery under K.S.A. 2014 Supp. 21-5413(b), the issue is moot.

Bulk's second area of argument is that the district court erred when it sentenced him in accordance with K.S.A. 2014 Supp. 21-5413(g)(2)(C), a severity level 5 person felony, despite the fact that the jury found him guilty of aggravated battery as defined by K.S.A. 2014 Supp. 21-5413(b)(2)(B), a severity level 8 person felony. In light of our ruling on the first issue raised by Bulk, it is unnecessary for us to discuss this further. Since we find that Bulk was properly convicted of a severity level 5 person felony, it was appropriate for the district court to sentence him accordingly.

Finally, Bulk argues that there was insufficient evidence presented at trial to sustain his conviction for aggravated assault. When a defendant/appellant challenges the sufficiency of the evidence used to convict him or her, this court reviews all evidence in the light most favorable to the prosecution and considers whether there was evidence upon which the factfinder could have found the defendant guilty beyond a reasonable doubt. In making its determination, this court does not reweigh the evidence or pass on the credibility of witnesses. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). It is only in rare instances where the testimony was so incredible that no reasonable factfinder

9

could have found guilt beyond a reasonable doubt that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 4-6, 660 P.2d 945 (1983).

Bulk makes two arguments with regard to the evidence that was presented at his trial. First, he contends that there was not sufficient evidence that "Taylor's apprehension of immediate bodily harm was reasonable." Second, Bulk argues that there was insufficient evidence he knowingly placed Taylor in apprehension of bodily harm. We disagree with his analysis.

The evidence at trial is plainly sufficient to uphold Bulk's conviction. Taylor testified that as he, Bulk, and Rios entered the room in which the gun used in Taylor's shooting was located, he noticed the gun lying on the floor with the clip next to it. After a while, Bulk picked up the gun, played with it, then pointed it at Taylor and dry fired it. Taylor testified that at the time Bulk pointed the gun at him he was uncertain whether there were any bullets in it. Because he did not know if the gun was capable of being shot, Taylor got angry when Bulk pointed the gun at him. When Bulk then pulled the trigger, Taylor testified that he was more scared than he had ever been in his life.

Bulk does not seem to dispute Taylor's testimony that his actions caused Taylor fear. Instead, Bulk takes issue with the jury's conclusion that the fear Taylor felt was reasonable. Bulk argues that it was not reasonable because Taylor knew that the clip was not in the gun and because the gun was in fact empty of bullets at the time of the acts giving rise to the aggravated assault charge.

We believe the legislature intended to impose both an objective and subjective requirement that a defendant's actions placed a victim in apprehension of bodily harm when it added the qualification that a defendant's apprehension be *reasonable* to the definition of assault. See K.S.A. 2014 Supp. 21-5412(a), (b). Caselaw prior to the addition of the word reasonable to the definition of assault focused the inquiry on

10

whether the individual victim was, in fact, placed in apprehension of bodily harm by the actions of the defendant. See *State v. Warbritton*, 215 Kan. 534, 537-38, 527 P.2d 1050 (1974). While we have found no cases addressing the reasonableness requirement in the context of assault, in other cases in which a reasonableness requirement is imposed, it carries with it a burden on the factfinder to make objective determinations based on the evidence presented.

As an example, self-defense is a defense to the use of force when the defendant reasonably believed force was necessary for his or her protection. See *State v. Simon*, 231 Kan. 572, 572-73, 646 P.2d 1119 (1982). For the defense to be viable, the jury must find both that there was evidence from which a person could objectively determine that the defendant was in danger so that defensive force was necessary and that the defendant actually believed he or she was in danger and needed to use force for protection. Here, the addition of the requirement that the jury find that a victim objectively had reason to be apprehensive has not eliminated the requirement that the jury also find the defendant was subjectively made apprehensive by the defendant's actions. See *State v. Brown*, 300 Kan. 565, 581-82, 331 P.3d 797 (2014) (considering, under the current wording of the assault statute, whether victim was actually made afraid by defendant's actions).

In *State v. Deutscher*, 225 Kan. 265, 589 P.2d 620 (1979), our Supreme Court considered whether a firearm could be considered a deadly weapon for purposes of an aggravated assault conviction when the weapon was not loaded at the time of the assault. The *Deutscher* court concluded that it is the victim's perception that is key—it is sufficient to sustain a conviction that a firearm was "pointed in such a manner as to communicate to the person threatened an apparent ability to fire a shot and thus do bodily harm." 225 Kan. at 270-71. That holding is equally applicable to the reasonableness of apprehension determination.

11

It is immaterial to a person who is unaware that the firearm being pointed at him or her is unloaded or that the weapon is not actually capable of causing harm. Without personal knowledge that the firearm is unloaded, it is reasonable for a person to react with fear when a gun is pointed at him or her. Here, Taylor's testimony provided sufficient evidence that Taylor was unsure whether the chamber of the gun Bulk pointed at him was empty to sustain the finding that his fear was reasonable.

Bulk next argues that there was insufficient evidence presented for the jury to find that he acted with the requisite intent. Assault is defined as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2014 Supp. 21-5412(a). Crimes in which the mens rea requirement is knowing or knowingly are general intent crimes. K.S.A. 2014 Supp. 21-5202(i); *State v. Kershaw*, 302 Kan. 772, 780, 359 P.3d 52 (2015). Our Supreme Court has interpreted knowingly to mean:

> "that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that [the outcome] was reasonably certain to result from the action." *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015).

The Supreme Court's interpretation expounds upon the legislature's instruction that a defendant acts knowingly "with respect to the nature of such person's conduct or to the circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2014 Supp. 21-5202(i).

Bulk's testimony was essentially that he was holding the gun and moving it around to examine it. At some point, without realizing he was doing so, he began pointing the gun in Taylor's direction. It was not until Taylor told Bulk not to point the gun at him that

he realized the gun was pointed in Taylor's direction. Bulk claimed that at no point did he intentionally point the gun at Taylor.

Bulk's testimony was contradicted by Taylor's testimony. Taylor testified that Bulk pointed the gun and dry fired it at Taylor. Taylor was extremely frightened by Bulk's actions and angrily told Bulk to stop pointing the gun at him. Rather than move the gun away, Bulk inserted the clip into the weapon as he continued to point it at Taylor.

Rios also testified that Bulk pointed the gun at Taylor but believed that Bulk's action was unintentional. Rios described how Taylor was upset that the gun was pointed at him and how he asked Bulk to move the weapon. Bulk refused, calling Taylor a "'little bitch,'" then continued to point the gun at Taylor as he inserted the clip back into the weapon and accidentally shot Taylor.

Based on these testimonies, there was sufficient evidence, viewed in the light most favorable to the prosecution, for the jury to find that Bulk acted in a way that he knew would place Taylor in reasonable apprehension of bodily harm. The jury could have believed Taylor's testimony that Bulk intentionally pointed the gun at him and dry fired it and determined that Bulk's actions were meant to frighten Taylor. Or, based on Taylor's and Rios' testimonies, the jury could have concluded that the assault occurred a few seconds later when, instead of moving the gun away from Taylor after he protested, Bulk continued to point it in his direction as he inserted the clip—a combination of actions that the jury could have concluded were calculated to instill fear in Taylor.

The weighing of testimony is a job for the jury, and none of the testimonies regarding the sequence of events were so unbelievable that the jury's determination should be disturbed. The jury's findings and Bulk's conviction for aggravated assault are affirmed.

Affirmed.